UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| MOHAMED SALEH, on behalf of himself and all others similarly situated,<br><br>      Plaintiff,<br><br>  -against-<br><br>SPOTIFY USA INC.,<br><br>      Defendant. | Case No. 2:23-cv-00147-KM-JSA<br><br>**DECLARATION OF JOHN OHLE IN SUPPORT OF DEFENDANT'S MOTION TO COMPEL ARBITRATION ON AN INDIVIDUAL BASIS** |

JOHN OHLE, pursuant to 28 U.S.C. § 1746, states as follows:

1. I am Group Product Manager – Legal and Financial Systems at Spotify USA Inc. ("Spotify") and lead the data analytics team that supports the Spotify legal department. I submit this declaration in support of Spotify's Motion to Compel Arbitration on an Individual Basis in the above-captioned matter (the "Motion"), and to make part of the record certain documents on which Spotify relies in the Motion.

2. I graduated from the University of Iowa College of Law in 2004. I have over fifteen years of product management experience. In past positions I have managed data-intensive products such as e-Communication Surveillance for Bloomberg Vault, Verifications (employment, education, credentials and references) for Sterling Talent Solutions, BCite and the Data & Privacy Law Center for Bloomberg Industry Group (previously named Bloomberg Law), and KeyCite, Profiler and administrative opinions for Thomson Reuters (Westlaw).

3. I joined Spotify in February 2020 as Senior Product Manager – Legal and Internal Audit Systems, and have served as the head of the above-mentioned data analytics team since

that time. I was promoted to Group Product Manager in September of 2022. My responsibilities include managing a team of data analysts that works to identify, retrieve, and analyze internal Spotify data to facilitate Spotify's disclosure of such data in connection with legal or regulatory proceedings. Additionally, I manage engineers who are responsible for the technology for publishing all pages on www.spotify.com/legal, which includes managing Spotify's Terms and Conditions of Use ("TOU").

4. Except where otherwise indicated, all statements set forth in this declaration are based on my personal knowledge and/or historical records maintained by Spotify in the ordinary course of business. I have also reviewed the Civil Complaint in the above-captioned matter, filed on December 12, 2022 ("Complaint") and the Declaration of Sofia Syed ("Syed Declaration"), which will be filed along with this declaration in support of the Motion.

**Spotify's Sign-Up Process**

5. Spotify is an audio streaming service and, among other things, operates www.spotify.com. Spotify offers two types of music streaming products in the U.S.: a free-to-user, ad-supported service ("Free Service"), and a paid subscription service ("Premium Service") (together, "Spotify Service"). The Premium Service includes, *inter alia*, a family plan ("Premium Family"). As discussed further below, Premium Family plans are governed by the TOU and certain additional terms specific to family plans (the "Family TOU"). The Family TOU expressly incorporates the TOU.

6. To access the Spotify service, a user must first create an account and thereby accept Spotify's Terms & Conditions. Spotify's policy and practice since at least 2016 (when Plaintiff appears to have created his account, as explained in greater detail below) has been to

require new users to enter account credentials and click a sign-up button accompanied by a conspicuous notice stating that by signing up for Spotify they are agreeing to the TOU.

7. Prospective users can create an account by visiting https://www.spotify.com/us/signup (the "Web Sign-Up Page") or on a mobile device by downloading the Spotify app and creating an account in the app (the "Mobile Sign-Up Page"). On the Web Sign-Up Page and the Mobile Sign-Up Page, a new user can create an account using their email address or another credential, such as a Facebook login. All sign-up options require users to accept the TOU as a condition of use of the Spotify Service. For exemplary purposes, attached as Exhibits A and B are true and correct screen captures showing the Web Sign-Up page and the Mobile Sign-Up Page, respectively, as they appeared on March 22, 2023.

8. Whether a new user signs up for Spotify on the Web Sign-Up Page or the Mobile Sign-Up Page, the sign-up process is materially the same: the prospective user enters registration information and clicks a large button (labeled "Sign Up" or "Create Account") to create their account. The button is accompanied by a conspicuous notice indicating that creating a Spotify account constitutes agreement to the TOU and hyperlinking to the TOU.

9. As explained below, our records indicate that Plaintiff signed up for Spotify via Facebook on a mobile device on July 28, 2016. Attached hereto as Exhibit C is a true and current screen capture of the Mobile Sign-Up Page as it appeared in July 2016.

10. As shown in Exhibit C, the Mobile Sign-Up Page contained a conspicuous notice alerting new users that they are agreeing to Spotify's TOU by creating an account. The notice, located immediately below the sign-up button, stated: "By signing up, you agree to Spotify's **Terms and conditions of Use** and **Privacy Policy**." The bolded phrase "**Terms and conditions of Use**" hyperlinked to the TOU. The following is a screen capture of the sign-up button and

3

accompanying text on the Mobile Sign-Up Page as it appeared in July 2016, as shown in Exhibit C hereto:



11. The Web Sign-Up Page when Plaintiff created a Spotify account in July 2016 was substantially the same as the Mobile Sign-Up Page. Attached hereto as <u>Exhibit D</u> is a true and correct screen capture of the Web Sign-Up Page as it appeared in July 2016. Similar to the July 2016 Mobile Sign-Up Page, the July 2016 Web Sign-Up Page included a notice stating, "By clicking on Sign up, you agree to Spotify's terms & conditions and privacy policy." The phrase "Spotify's terms & conditions" appeared in bright green font and hyperlinked to the TOU. The following is a screen capture of the sign-up button on the July 2016 Web Sign-Up Page, as shown in Exhibit D hereto:



12. As noted above, since before 2016, Spotify's longstanding policy and practice has been to: (a) provide conspicuous notice that signing up constituted agreement to the TOU and hyperlink to the TOU, and (b) require users to click a large sign-up button located close to that notice.

4

**Plaintiff's Spotify Account and Repeated Acceptance of Spotify's TOU**

13. In the Complaint, Plaintiff alleges that he "is a subscriber of Spotify" and "consistently paid Spotify a subscription fee during the period of his subscription." Compl. ¶¶ 21-22. He does not describe when he became a Spotify subscriber or provide sufficient information to allow Spotify (absent the additional information located by Spotify's counsel) to locate his account.

14. I understand that counsel for Spotify repeatedly attempted to obtain Plaintiff's email address from Plaintiff's counsel, as set forth in the accompanying Syed Declaration, but that Plaintiff's counsel failed to provide Plaintiff's email address. I also understand that counsel for Spotify used public records to locate Plaintiff's email address and determined that Plaintiff's email address is likely to be ▇▇▇▇▇▇▇▇▇▇.

15. Using that email address, my team located a free account created on July 28, 2016 via Facebook login, belonging to a subscriber named Mohamed Saleh. Spotify's records indicate that this account was later changed to a Premium Family plan. Plaintiff alleges that he pays Spotify a subscription fee, Compl. ¶¶ 21-22, meaning he is a Premium subscriber. In addition, the postal code associated with this account is 07657, which I understand to be a postal code for the town of Ridgefield, New Jersey. The postal code associated with this account is consistent with Plaintiff's allegation that he is a resident of Ridgefield, New Jersey. Compl. ¶ 3.

16. When Plaintiff signed up for Spotify on July 28, 2016, he used the Mobile Sign-Up page, which includes a conspicuous notification that signing up constituted agreement to the hyperlinked TOU, located in close proximity to the sign-up button. *See* Exhibit C.

17. Therefore, consistent with Spotify's policy and practice, Plaintiff had to accept the TOU on the date he first created a Spotify account.

18. Plaintiff also subsequently accepted updates to the TOU, including by responding to an in-app notification and continuing to use the Spotify Service.

19. As provided in the TOU, quoted below, Spotify provides notice to users of changes to the TOU through reasonable means. For example, Spotify provided an in-app notification to users about an update to its TOU effective July 6, 2017. When users logged into the Spotify application, they received the notification in the form of a pop-up screen. The notification expressly referenced the Arbitration Agreement. Attached hereto as <u>Exhibit E</u> is a screen capture of the in-app notification Spotify provided users regarding the July 6, 2017 update to the TOU.

20. As shown in Exhibit E, the in-app notification stated:

We've updated our U.S. Terms and Conditions of Use. Please make sure you read the whole thing. Here are some updates:

> We've removed sections that do not apply to users in the U.S.
> We've revised portions of our arbitration clause.
> We are not changing our Privacy Policy in this update.

By selecting "Agree", you agree to the Terms and Conditions of Use.

The notification hyperlinked to the updated TOU. To continue accessing the Spotify Service, Spotify users had to expressly accept the updated TOU by clicking a button that read: "Agree."

21. Our records show that the user whose account is associated with the email address listed above (*i.e.*, Plaintiff), *supra* ¶ 14, affirmatively agreed to the July 6, 2017 TOU following Spotify's in-app notification.

22. In addition, on September 6, 2019, Spotify began notifying users via email of an update to the Family TOU, which incorporates the TOU. The email notification stated:

> You do not have to do anything else to accept these Terms. Your acceptance of the updated Terms and Conditions will be deemed to have been granted if you continue to use the Spotify Premium Family service on or after October 6, 2019.

>If you do not want to accept the terms, you can cancel your Spotify Premium Family subscription before October 6, 2019.

Plaintiff continued to use his Spotify Premium Family plan after receiving that email.

23. Plaintiff also continued to use the Spotify Service after filing the Complaint on December 12, 2022, a period governed by the currently operative TOU, referenced below.

**<u>Spotify's Terms of Use</u>**

24. The TOU have been available on Spotify's website since at least July 2011.

25. Attached hereto as <u>Exhibit F</u> is a true and correct copy of the current TOU, effective September 1, 2021 to the present, a period which includes the date of the Complaint.

26. As noted above, Spotify Premium Family plans are subject to the TOU as well as the Family TOU, which expressly incorporates the TOU. Attached hereto as <u>Exhibit G</u> is a true and correct copy of the Family TOU effective July 1, 2020 to the present, a period which includes the date of the Complaint.

27. The below terms quoted from the current TOU (as shown in Exhibit F) were present in the prior versions of the TOU accepted by Plaintiff. Attached hereto as <u>Exhibit H</u> is a true and correct copy of the TOU effective July 6, 2017, which Plaintiff affirmatively accepted, as explained above, *supra* ¶ 21. Attached hereto as <u>Exhibit I</u> is a true and correct copy of the TOU effective September 9, 2015, which were in effect when Plaintiff signed up for Spotify in July 2016.

28. The TOU begins with a table of contents that allows users to navigate to particular provisions of the TOU. The table of contents includes a hyperlink to the provision labeled "Problems and Disputes" that brings users to that provision without even needing to scroll. Users may also reach this provision by scrolling through the TOU.

29. The Introduction to the TOU provides: "By signing up for, or otherwise using, the Spotify Service, you agree to these Terms. If you do not agree to these Terms, then you must not use the Spotify Service or access any Content." Exhibit F, TOU § 1.

30. The Introduction to the TOU also provides:

> THESE TERMS CONTAIN A **MANDATORY ARBITRATION PROVISION** THAT, AS FURTHER SET FORTH IN SECTION 6 BELOW, REQUIRES THE USE OF ARBITRATION ON AN **INDIVIDUAL BASIS** TO RESOLVE DISPUTES, RATHER THAN JURY TRIALS OR ANY OTHER COURT PROCEEDINGS, **OR CLASS ACTIONS** OF ANY KIND.

Exhibit F, TOU § 1 (emphasis added) (capitalization in original).

31. Section 6 of the TOU sets forth the terms of the mandatory arbitration provision as follows:

> You and Spotify agree that any dispute, claim, or controversy between you and Spotify arising in connection with or relating in any way to these Terms or to your relationship with Spotify as a user of the Spotify Service (whether based in contract, tort, statute, fraud, misrepresentation, or any other legal theory, and whether the claims arise during or after the termination of these Terms) will be determined by **mandatory binding individual (not class) arbitration**. You and Spotify further agree that the arbitrator shall have the exclusive power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the Arbitration Agreement or to the arbitrability of any claim or counterclaim. THERE IS NO JUDGE OR JURY IN ARBITRATION, AND COURT REVIEW OF AN ARBITRATION AWARD IS LIMITED. The arbitrator must follow these Terms and can award the same damages and relief as a court (including attorney fees and costs only where allowable under applicable law), except that the arbitrator may not award any relief, including declaratory or injunctive relief, benefiting anyone but the parties to the arbitration. This arbitration provision will survive termination of these Terms.

Exhibit F, TOU § 6 (the "Arbitration Agreement") (emphasis added) (capitalization in original).

32. A subsection of the Arbitration Agreement, titled "No class [o]r representative proceedings; class action waiver," provides that as for the user and Spotify:

> EACH MAY BRING CLAIMS AGAINST THE OTHER ONLY IN YOUR OR ITS INDIVIDUAL CAPACITY AND NOT AS A PLAINTIFF OR CLASS MEMBER IN ANY PURPORTED CLASS OR REPRESENTATIVE ACTION. Unless both you and Spotify agree, no arbitrator or judge may consolidate more than one person's claims or otherwise preside over any form of a representative or class proceeding.

*Id.* (capitalization in original).

33. A subsection of the Arbitration Agreement, titled "Arbitration rules," further provides: "Any arbitration between [the user] and Spotify will take place under the Consumer Arbitration Rules of the American Arbitration Association ('AAA') then in force (the 'AAA Rules'), as modified by this Arbitration Agreement." Exhibit F, TOU § 6.

34. In a subsection titled "Changes," the TOU provides as follows:

> We may make changes to these Terms (including any additional Spotify terms and conditions incorporated by reference herein) from time to time by notifying you of such changes by any reasonable means, including by posting the revised Terms on the applicable Spotify Service (provided that, for material changes, we will seek to supplement such notice by email, an in-service pop-up message or other prominent notice within the Service, or other means) . . . . **Your use of the Spotify Service following any changes to these Terms will constitute your acceptance of such changes**. If you do not wish to continue using the Spotify Service under the updated Terms, you may terminate your account by contacting us. The effective date set forth at the top of this document indicates when these Terms were last changed.

Exhibit F, TOU § 7 (emphasis added).

35. The TOU specifies that its provisions "are governed by and shall be construed in accordance with the laws of the State of California . . . without regard to California's choice or conflicts of law principles." Exhibit F, TOU § 6.

9

DocuSign Envelope ID: EB2E3E26-B5D4-44BA-8DCB-207EB498BEB3

36. As shown in Exhibit H, the July 6, 2017 TOU (which Plaintiff expressly accepted) included, *inter alia*, an arbitration agreement, class waiver, and "acceptance of changes" provision with materially similar terms to those quoted above from the current TOU, providing that:

> Occasionally we may, in our discretion, make changes to the Agreements. When we make material changes to the Agreements, we'll provide you with prominent notice as appropriate under the circumstances, e.g., by displaying a prominent notice within the Service or by sending you an email. In some cases, we will notify you in advance, and **your continued use of the Service after the changes have been made will constitute your acceptance of the changes**. Please therefore make sure you read any such notice carefully. If you do not wish to continue using the Service under the new version of the Agreements, you may terminate the Agreements by contacting us through the Customer Service contact form.
>
> …
>
> You and Spotify agree that any dispute, claim, or controversy between you and Spotify arising in connection with or relating in any way to these Agreements or to your relationship with Spotify as a user of the Service (whether based in contract, tort, statute, fraud, misrepresentation, or any other legal theory, and whether the claims arise during or after the termination of the Agreements) will be determined by **mandatory binding individual (not class) arbitration**. You and Spotify further agree that the arbitrator shall have the exclusive power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the Arbitration Agreement or to the arbitrability of any claim or counterclaim. Arbitration is more informal than a lawsuit in court. THERE IS NO JUDGE OR JURY IN ARBITRATION, AND COURT REVIEW OF AN ARBITRATION AWARD IS LIMITED. There may be more limited discovery than in court. The arbitrator must follow this agreement and can award the same damages and relief as a court (including attorney fees), except that the arbitrator may not award any relief, including declaratory or injunctive relief, benefiting anyone but the parties to the arbitration. This arbitration provision will survive termination of the Agreements.
>
> …

DocuSign Envelope ID: EB2E3E26-B5D4-44BA-8DCB-207EB498BEB3

> YOU AND SPOTIFY AGREE THAT EACH MAY BRING CLAIMS AGAINST THE OTHER ONLY IN YOUR OR ITS INDIVIDUAL CAPACITY AND NOT AS A PLAINTIFF OR CLASS MEMBER IN ANY PURPORTED CLASS OR REPRESENTATIVE ACTION. Unless both you and Spotify agree, no arbitrator or judge may consolidate more than one person's claims or otherwise preside over any form of a representative or class proceeding.

Exhibit H §§ 2, 24 (emphasis added) (capitalization in original).

37. As shown in Exhibit I, the September 9, 2015 TOU, which were in effect when Plaintiff signed up for Spotify in July 2016, also included, *inter alia*, an arbitration agreement, class waiver, and "acceptance of changes" provision with materially similar terms to those in the current TOU, providing:

> Occasionally we may, in our discretion, make changes to the Agreements. When we make material changes to the Agreements, we'll provide you with prominent notice as appropriate under the circumstances, e.g., by displaying a prominent notice within the Service or by sending you an email. In some cases, we will notify you in advance, and **your continued use of the Service after the changes have been made will constitute your acceptance of the changes**. Please therefore make sure you read any such notice carefully. If you do not wish to continue using the Service under the new version of the Agreements, you may terminate the Agreements by contacting us through the Customer Service contact form.
>
> …
>
> WHERE PERMITTED UNDER THE APPLICABLE LAW, YOU AND SPOTIFY AGREE THAT EACH MAY BRING CLAIMS AGAINST THE OTHER ONLY IN YOUR OR ITS INDIVIDUAL CAPACITY AND NOT AS A PLAINTIFF OR CLASS MEMBER IN ANY PURPORTED CLASS OR REPRESENTATIVE ACTION. Unless both you and Spotify agree, no arbitrator or judge may consolidate more than one person's claims or otherwise preside over any form of a representative or class proceeding.
>
> …

> You and Spotify agree that any dispute, claim, or controversy between you and Spotify arising in connection with or relating in any way to these Agreements or to your relationship with Spotify as a user of the Service (whether based in contract, tort, statute, fraud, misrepresentation, or any other legal theory, and whether the claims arise during or after the termination of the Agreements) will be determined by mandatory binding individual arbitration. Arbitration is more informal than a lawsuit in court. THERE IS NO JUDGE OR JURY IN ARBITRATION, AND COURT REVIEW OF AN ARBITRATION AWARD IS LIMITED. There may be more limited discovery than in court. The arbitrator must follow this agreement and can award the same damages and relief as a court (including attorney fees), except that the arbitrator may not award declaratory or injunctive relief benefiting anyone but the parties to the arbitration. This arbitration provision will survive termination of the Agreements.

Exhibit I §§ 2, 24 (emphasis added) (capitalization in original).

38. I declare under penalty of perjury that the foregoing is true and correct.

Executed on March 23, 2023 in New York, New York.

_____
John Ohle